**FILED - LN**

January 7, 2010 3:40 PM

TRACEY CORDES, CLERK
U.S. DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
BY:_____/_____

## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF MICHIGAN

COLONY INSURANCE COMPANY,
a Virginia corporation,

                Plaintiff,

v.

AMERICAN BENEFIT CONCEPTS, INC., a Michigan
Corporation; DONALD JUBERG; JASON JUBERG;
MATTHEW HARPER; ANNE BODNAR; ROBERT
BODNAR; DELPHINE QUIST; DOUGLAS C. BAKER;
RYAN BAKER; GENESIS EQUITY GROUP, LLC, a
Michigan limited liability company, on its own behalf
and doing business as ARMEX MANAGEMENT GROUP;
GENESIS EQUITY PARTNERS, LLC, a Michigan limited
liability company; TRENT FRANKE; DANIEL
VAN SUILLCHEM; CARLOS RUSO; GLOBAL WEALTH
CONSULTANTS, LLC, a Michigan limited liability company;
DIVERSIFIED LENDING GROUP, INC., a California corporation;
AMERICAN EQUITY INVESTMENT LIFE INSURANCE
COMPANY, an Iowa corporation; APPLIED EQUITIES, INC.,
a California corporation; PAUL DRAPER; SHIRLIANN DRAPER;
NEW LIFE CLUB, LLC, an Indiana limited liability
Company; JON WHAN; DOE DEFENDANTS 1-50;

                Defendants.

_____/

Case No.

**1:10-cv-15**
**Robert J. Jonker**
**United States District Judge**

Hon.

**COMPLAINT OF COLONY
INSURANCE COMPANY
FOR RESCISSION OR,
ALTERNATIVELY,
DECLARATORY RELIEF**

Peter B. Kupelian (P31812)
Carol G. Schley (P51301)
Attorneys for Plaintiff Colony Insurance Company
Kupelian Ormond & Magy, P.C.
25800 Northwestern Highway, Ste. 950
Southfield, MI  48075
(248) 357-0000

_____/



KUPELIAN ORMOND & MAGY
A PROFESSIONAL CORPORATION

KOM

### COMPLAINT OF COLONY INSURANCE COMPANY FOR RESCISSION, OR
### <u>ALTERNATIVELY, DECLARATORY RELIEF</u>

Plaintiff Colony Insurance Company ("Colony"), by and through its counsel, states for its Complaint as follows:

## THE PARTIES

1.      Plaintiff Colony is a Virginia corporation that has its principal place of business in the State of Virginia.  Colony is, and at all relevant times was, duly authorized to do business in the State of Michigan as a "surplus lines" insurer.

2.      Colony is informed and believes and on that basis alleges that Defendant American Benefit Concepts, Inc. ("ABC") is a Michigan corporation that has its principal place of business in the State of Michigan and at all relevant times was duly authorized and did conduct business in Kalamazoo County, Michigan, and other counties in the Western District of Michigan.

3.      Colony is informed and believes and on that basis alleges that Defendant Donald Juberg is an individual who is a citizen of Michigan and who is authorized to and conducts business in Kalamazoo County, Michigan, and other counties in the Western District of Michigan as an owner, principal, officer and/or employee of ABC.

4.      Colony is informed and believes and on that basis alleges that Defendant Jason Juberg is an individual who is a citizen of Michigan and who is authorized to and conducts business in Kalamazoo County, Michigan, and other counties in the Western District of Michigan as an owner, principal, officer and/or employee of ABC.

5.      Colony is informed and believes and on that basis alleges that Defendant Matthew Harper ("Harper") is an individual who is a citizen of Michigan and who is authorized to and

2

conducts business in Kalamazoo County, Michigan, and other counties in the Western District of Michigan as an owner, principal, officer and/or employee of ABC.

6.      Colony is informed and believes and on that basis alleges that Defendant Anne Bodnar is an individual who is a citizen of Antrim County, Michigan, and who engaged in one or more business transactions with ABC relevant to this Complaint.

7.      Colony is informed and believes and on that basis alleges that Defendant Robert Bodnar is an individual who is a citizen of Antrim County, Michigan, and who engaged in one or more business transactions with ABC relevant to this Complaint.

8.      Colony is informed and believes and on that basis alleges that Defendant Delphine Quist ("Quist") is an individual who is a citizen of Kent County, Michigan, and who engaged in one or more business transactions with ABC relevant to this Complaint.

9.      Colony is informed and believes and on that basis alleges that Defendant Douglas C. Baker is an individual who is a citizen of Michigan who conducts business as a certified estate advisor and at all relevant times was duly authorized and did conduct business in Kent County, Michigan, and other counties in the Western District of Michigan.

10.     Colony is informed and believes and on that basis alleges that Defendant Ryan Baker is an individual who is a citizen of Michigan, and at all relevant times was duly authorized and did conduct business in Kent County, Michigan, and other counties in the Western District of Michigan.

11.     Colony is informed and believes and on that basis alleges that Defendant Genesis Equity Group, LLC ("Genesis Equity Group") is a Michigan limited liability company that has its principal place of business in the State of Michigan and at all relevant times was duly authorized

and did conduct business in Kent County, Michigan, and other counties in the Western District of Michigan on its own behalf and as Armex Management Group.

12.     Colony is informed and believes and on that basis alleges that Defendant Genesis Equity Partners, LLC ("Genesis Equity Partners") is a Michigan limited liability company that has its principal place of business in the State of Michigan and at all relevant times was duly authorized and did conduct business in Kent County, Michigan, and other counties in the Western District of Michigan.

13.     Colony is informed and believes and on that basis alleges that Defendant Trent Franke ("Franke") is an individual who is a citizen of Michigan, and at all relevant times was duly authorized and did conduct business in Kent County, Michigan, and other counties in the Western District of Michigan.

14.     Colony is informed and believes and on that basis alleges that Defendant Daniel Van Suillchem ("Van Suillchem") is an individual who is a citizen of Michigan, and at all relevant times was duly authorized and did conduct business in Kent County, Michigan, and other counties in the Western District of Michigan.

15.     Colony is informed and believes and on that basis alleges that Defendant Carlos Ruso ("Ruso") is an individual who is a citizen of Michigan, and at all relevant times was duly authorized and did conduct business in Kent County, Michigan, and other counties in the Western District of Michigan.

16.     Colony is informed and believes and on that basis alleges that Defendant Global Wealth Consultants, LLC ("Global Wealth") is a Michigan limited liability company that has its principal place of business in the State of Michigan and at all relevant times was duly authorized

4

and did conduct business in Kent County, Michigan, and other counties in the Western District of Michigan.

17.    Colony is informed and believes and on that basis alleges that Defendant Diversified Lending Group, Inc. ("DLG") is a California corporation that has its principal place of business in the State of California and at all relevant times was duly authorized and did conduct business in Kent County, Michigan, and other counties in the Western District of Michigan.

18.    Colony is informed and believes and on that basis alleges that Defendant American Equity Investment Life Insurance Company ("American Equity") is an Iowa corporation that has its principal place of business in the State of Iowa and at all relevant times was duly authorized and did conduct business in Kent County, Michigan, and other counties in the Western District of Michigan.

19.    Colony is informed and believes and on that basis alleges that Defendant Applied Equities, Inc. ("Applied Equities") is a California corporation that has its principal place of business in the State of California and at all relevant times was duly authorized and did conduct business in Kent County, Michigan, and other counties in the Western District of Michigan.

20.    Colony is informed and believes and on that basis alleges that Defendant Paul Draper is an individual who is a citizen of Van Buren County, Michigan, and who engaged in one or more business transactions with ABC relevant to this Complaint.

21.    Colony is informed and believes and on that basis alleges that Defendant Shirliann Draper is an individual who is a citizen of Van Buren County, Michigan, and who engaged in one or more business transactions with ABC relevant to this Complaint.

KUPELIAN ORMOND & MAGY
A PROFESSIONAL CORPORATION

KOM

22.    Colony is informed and believes and on that basis alleges that Defendant New Life Club, LLC ("New Life") is an Indiana limited liability company that has its principal place of business in the State of Indiana and at all relevant times was duly authorized and did conduct business in Van Buren County, Michigan, and other counties in the Western District of Michigan.

23.    Colony is informed and believes and on that basis alleges that Defendant Jon Whan ("Whan") is an individual who is a citizen of Indiana, and at all relevant times was duly authorized and did conduct business in Van Buren County, Michigan, and other counties in the Western District of Michigan.

24.    Upon information and belief, Doe Defendants 1 to 50 are individuals or entities who have engaged in transactions with ABC, Donald Juberg, Jason Juberg, Harper or other principals, agents or employees of ABC involving the sale of DLG securities or Applied Equities securities. It is anticipated Doe Defendants 1 to 50 will assert claims or lawsuits against ABC, Donald Juberg, Jason Juberg, Harper or other principals, agents or employees of ABC, and such claims or lawsuits may concern coverage issues under the Colony policy which are raised in this Complaint. Colony does not know the true names and capacities of Doe Defendants 1 to 50, and thus sues these defendants by fictitious names. Colony will amend this complaint to allege their true names and capacities when ascertained.

### JURISDICTION AND VENUE

25.    Jurisdiction is appropriate in this matter pursuant to 28 U.S.C. § 1332 as complete diversity of citizenship exists between the Plaintiff, on one hand, and the Defendants, on the other hand, and because the amount in controversy exceeds $75,000, exclusive of costs, interest and legal expenses.

26.     Venue is appropriate in this matter pursuant to 28 U.S.C. §1391(a) because the events giving rise to the claims at issue arose in whole or part in the Western District of Michigan.

## THE POLICY APPLICATION AND RENEWAL APPLICATIONS

27.     This matter concerns an Insurance Agents and Brokers Professional Liability Policy, Policy Number EO405188 (the "Policy") entered into between Colony and named insured American Benefit Concepts, Inc.  The Policy period commenced October 30, 2009 and expires October 30, 2010.  The Policy has an each claim limit of $100,000, an aggregate limit of $300,000 and a Retroactive Date of October 30, 2009.  An accurate copy of the Policy is attached hereto as **Exhibit A**.

28.     The original application for the Policy (the "Application") was dated October 20, 2009, and signed by Jason Juberg as the president of ABC.  An accurate copy of the Application, signed by Jason Juberg, is attached hereto as **Exhibit B**.

29.     In its Policy Application, ABC stated that 80 percent of its income derived from insurance sales and 20 percent from fixed annuity sales, and that 100 percent of its annual premium volume derives from Individual Life and Accident/Health policies.  (Application p. 3).  ABC did not identify in the Application any percentage whatsoever of its income or sales deriving from the sale of securities.

30.     As part of its Application, ABC submitted a letter signed by Jason Juberg dated October 20, 2009, which explained ABC's involvement with selling DLG securities.  The letter stated in part:

> American Benefit Concepts ("ABC") was introduced to Bruce Friedman and Diversified Lending Group ("DLG") in 2007.  Bruce introduced ABC to premium financing and instructed us on how people could use the untapped equity in their

KUPELIAN ORMOND & MAGY
A PROFESSIONAL CORPORATION

KOM

homes to fund life insurance premiums, long term care policies, etc. After due diligence on the part of ABC and based on the fact that ABC was assured that DGL was not a security, a select portion of our clients opted to put money with DLG and its real estate investments…

In November of 2008, the Michigan's Office of Finance and Insurance Regulation issued an Order to Cease and Desist related to the DLG product claiming it was an unregistered security. ABC immediately complied with this order…

Although in hindsight, we regret that we veered from the path of insurance sales to include private equity investments, at NO time did American Benefit Concepts have malicious intent toward our clients or any investors. In March and April of 2009, ABC personally issued checks to cover the mortgage and interest payments of investors affected by this situation. Unfortunately, finances prevented us from making any further payments.

It is the strong desire of ABC to continue to sell only insurance related products and perhaps enter into some type of settlement where we could use the profits from those insurance sales to pay back investors over time. In order to sell these insurance products, however, we would be required to carry E&O insurance, for which at this time we respectfully request your consideration of coverage. Although based on our attorney's advice we have submitted these claims to our current E&O carrier, all claims have been denied or are being denied based on the fact that the aforementioned investments are not considered insurance products and no claims have been paid out.

31.    Further, in its Application, ABC stated that it has "resumed selling insurance only products – no private equity." (Application, p. 7).

32.    In summary, ABC represented in its Application that it sold DLG securities to only a "select portion" of its clients, that it immediately ceased the sale of DLG securities in November 2008 upon the State of Michigan's issuance of a cease and desist order, that it only sold insurance-related products, and that the insurance policy it was seeking from Colony would only be for its insurance-related product sales.

33.    The Policy Application also contained the following question:

C.    Are you, or any of your partners, officers, directors, solicitors, office brokers or employees, aware of any circumstances or any allegations or contentions of any incident which may result in a

8

> claim against you, your predecessors in business or any past or present partner, officer, director, solicitor, office broker or employee?

In response to this question, ABC stated "yes," and that such claims were "not insurance related." In addition, ABC identified four such claims in its Application: (i) a claim filed by J.C. and Ann C. Boone; (ii) a claim filed by Janet Morgenthau, et al.; (iii) a claim filed by Norm and Molly Westrate and Richard McDonald; and (iv) a claim filed by David and Suzanne Arent, Ray Beorema and Clayton Raifsnider. No other "circumstances or any allegations or contentions of any incident which may result in a claim" were disclosed in the Application. (Application, p. 7).

34.     The Application stated as follow directly above the signature line upon which Jason Juberg signed on behalf of ABC: "I declare that the information submitted herein is true to the best of my knowledge and becomes part of my Professional Liability Application. I understand that an incorrect or incomplete statement could void my protection." (Application, p. 7).

35.     In reliance upon the truth of written statements and responses contained in ABC's Application, Colony issued the Policy to ABC.

## PERTINENT POLICY PROVISIONS

36.     The insuring agreement ("Insuring Agreement") of the Policy provides in pertinent part as follows:

SECTION I – COVERAGES

1.      Insuring Agreement

a.      We will pay, in excess of the Deductible shown in the Declarations, those sums the insured becomes legally obligated to pay as "damages" because of "professional services" rendered or that should have been rendered to which this insurance applies. We will have the right and

9

duty to defend the insured against a "claim" seeking those "damages." However, we will have no duty to defend the insured against any "claim" seeking "damages" for "professional services" to which this insurance does not apply.    We may, at our discretion, investigate any occurrence and settle any "claim" that may result.  But:

(1)    The amount we will pay for "damages" is limited as described in Section III – LIMITS OF INSURANCE AND DEUCTIBLE;

(2)    Our right and duty to defend end when we have used up the applicable Limit of Insurance in the payment of judgments, settlements or defense costs.

b.    This insurance applies to "claims" for "damages" only if:

(1)    The "damage" arises out of an act, error or omission in the conduct of the insured's "professional services;"

(2)    The "damage" arises out of a "professional service" that occurs subsequent to the Policy effective date or Retroactive Date, if applicable, and prior to the expiration of the Policy; and

(3)    The "claim" or an event about which any insured obtains knowledge which might result in a "claim" is reported in writing to us subsequent to the effective date and prior to the expiration date of the policy or Extended Reporting Periods, if applicable.

Policy Section I – Coverages 1.a and b.

37.    In addition, the Policy contains an endorsement that provides as follows:

**EXCLUSION OF DESIGNATED PROFESSIONAL SERVICES**

This endorsement modifies insurance provided under the following:

PROFESSIONAL LIABILITY

This policy does not apply to any "claim" based on or directly or indirectly arising out of or resulting from any "professional service" shown in the schedule below.

10

**SCHEDULE**

Description of Excluded "Professional Services;"

DLG AND ANY EQUITY FINANCING PRODUCTS OR RELATED SERVICES PROVIDED.

38.    The Policy defines an "insured" in relevant part as follows:

SECTION II – WHO IS AN INSURED

1.    The Named Insured stated in the Policy Declarations.

2.    Any person who is or was your partner, officer, director, stockholder or employee, but only for "professional services" rendered on your behalf….

Policy, Section II.1 and 2.

39.    The Policy also contains exclusions to coverage, as follows:

2.    Exclusions

This Policy does not apply to any "claim:"

a.    Based on or directly or indirectly arising from:

(1)    A "professional service" rendered prior to the effective date of the Policy if any insured knew or could have reasonably foreseen that the "professional service" could give rise to a "claim;"…

(3)    Any "claim", suit, act, error or omission disclosed in the application for this Policy;

***

e.    Based on or directly or indirectly arising out of rendering or failure to render "professional services" as an attorney, accountant, actuary, tax preparer or tax consultant, real estate broker, security broker, travel agent, security dealer, mortgage broker, financial planner, title agent or any other

"professional service" unless such "professional services" are specifically insured hereunder by endorsement and an additional premium paid;

f.    Based on or directly or indirectly arising out of:

  (1)    The registering, qualifying or reporting under:

     (a)    the Securities Act of 1933
     (b)    the Securities Exchange Act of 1934
     (c)    the Investment Company Act of 1940
     (d)    the Trust Indenture Act of 1939
     (e)    the Investment Advisors Act of 1940
     (f)    the Public Utility Holding Company Act of 1935
     (g)    state Blue Sky laws, and
     (h)    any similar state statute, any rule or regulation promulgated under any of the foregoing, any amendment to any of the foregoing, or any provision of the common law imposing liability in connection with the offer, purchase or sale of securities;

  (2)    Private placement of private securities, limited partnerships, syndicates of any kind or real estate investment trusts;

***

k.    Based on or directly or indirectly arising out of or resulting from:

  (1)    Any act committed with knowledge of its wrongful nature or with the intent to cause damage;

  (2)    The gaining by the insured of any personal profit, gain or advantage to which the insured is not legally entitled; or

  (3)    Any criminal, fraudulent or dishonest act.

However, we shall defend such allegations against the insured if it involves a "claim" otherwise covered under the Policy until final adjudication;

*** 

    q.        Based on or directly or indirectly arising out of or resulting from a mistaken, false, misleading or deceptive representation of any security, mutual fund or any variable or fixed annuity or variable life insurance product; or guarantee by an insured of any investment results, returns, interest rates, yield, future premium payments or tax consequences in connection with any life insurance product, annuity, mutual fund or security by an insured or by others on the insured's behalf; or in connection with a viatical settlement;....

Policy, Section I.2.a, e, f, k and q.

40.    The Policy contains an endorsement that provides as follows:

SECTION I – COVERAGES, 2. Exclusions is amended and the following is added:

This insurance does not apply to any "claim" for or awards of:

1. Punitive, exemplary or multiple damages; or
2. Equitable or non-pecuniary relief;

Including any fines, penalties, court imposed sanctions, return or restitution of legal fees, costs or other expenses associated with such awards.

Policy, Endorsement, Punitive, Exemplary or Multiple Damage Exclusion.

41.    The Policy includes the following condition:

6.    Representations

By accepting this Policy, you agree:
    a.    The statements in the Declarations are accurate and complete;
    b.    Those statements are based upon representations you made to us; and
    c.    We have issued this Policy in reliance upon your representations.

Policy, Section V.6.

42.    Relevant definitions in the Policy include the following:

13

1.    "Claim" means a demand for monetary "damages" arising out of a "professional service" made against the insured by service of suit, the institution of arbitration or administrative proceedings or otherwise, but does not include a demand for equitable or non-pecuniary relief.

2.    "Damages" means judgments, awards and settlements an insured is legally obligated to pay as a result of a "claim" to which this policy applies.

\*\*\*

6.    "Professional services" means those services performed for others in the insured's capacity as a duly licensed insurance agent, broker or consultant, employee benefits counselor or notary public and as described in the Declarations of this Policy.

Policy, Section VII.1, 2 and 6.

## THE UNDERLYING LAWSUITS

### The Bodnar Lawsuit

43.    ABC, Jason Juberg, and Donald Juberg are defendants in a pending underlying lawsuit filed by Anne and Robert Bodnar (the "Bodnars") captioned as *Anne and Robert Bodnar v. Donald Juberg, et al.*, Kalamazoo County Circuit Court, Michigan (the "Bodnar Lawsuit"). The Bodnar Lawsuit was filed on or about November 3, 2009. A copy of the Complaint in the Bodnar Lawsuit is attached hereto as **Exhibit C** and incorporated herein by reference.

44.    In relevant summary, the Bodnar Lawsuit alleges as follows:

▪    At the end of February 2008, the Bodnars met Donald Juberg, who discussed with them "a retirement investment offering an assured 12% annual rate of return." (Bodnar Complaint, ¶ 3).

▪    Donald Juberg sent an email to the Bodnars on March 6, 2008, in which he discussed the "12% plan," and stated that it paid 12.6 percent yearly and that "[o]ur firm,

14

American Benefits Concepts, guarantees all fund [sic] as well as the bank firm, Diversified Lending Group." (Bodnar Complaint, ¶ 5).

- On April 17, 2008, the Bodnars collectively transferred $120,000 to an account for purposes of buying the investment product. (Bodnar Complaint, ¶¶ 17-18).

- On April 22, 2008, the Bodnars each signed a DLG investment contract, "with and through Defendant Donald Juberg." (Bodnar Complaint, ¶¶ 19-20).

- On June 23, 2008, the Bodnars received a letter from ABC, Jason Juberg and Donald Juberg which stated that they were "confident in our recommendations" and that they "will further guarantee your principal." (Bodnar Complaint, ¶¶ 21-23).

- On August 29, 2008, the Bodnars transferred an additional $160,000 for investing in DLG. (Bodnar Complaint, ¶¶ 24-25).

- On March 23, 2009, the Bodnars received notice that a receiver was appointed for DLG and also received an email from an SEC representative regarding "some of the DLG problems which were garnering the attention and concern of the SEC." (Bodnar Complaint, ¶ 31).

- From April to August 2009, the Jubergs received various emails from Donald Juberg, which updated them on the status of their investment with DLG and DLG's dealings with its receiver. (Bodnar Complaint, ¶¶ 32-37)

- Defendants have not "made good on their guarantees to Plaintiffs." (Bodnar Complaint, ¶ 39).

- The DLG products sold by Defendants to the Bodnars are not registered under the Michigan Uniform Securities Act ("MUSA"), are not exempt from registration, and are not

controlled by federal law. Therefore, "The contracts sold by Defendants may not lawfully be sold in Michigan." (Bodnar Complaint, ¶¶ 42-43).

- None of the Defendants were "properly registered under MUSA." (Bodnar Complaint, ¶ 45).

45. The Bodnars further allege that the named Defendants are liable to them "because of Defendants' individual violations of securities laws, their negligence, and their personal and company's guarantees made to both Plaintiffs." (Bodnar Complaint, ¶ 47).

46. As relief, the Bodnars demand a judgment "in whatever amount they are found to be entitled," and costs, interest and attorneys fees.

47. The defense of the Bodnar Lawsuit was tendered to Colony on or about December 9, 2009. Colony denied coverage under the Policy based upon various grounds, including: (i) the Insuring Agreement not being met due to no allegations regarding the rendering or failure to render "professional services" as defined by the Policy and as required by the Policy's Insuring Agreement; (ii) the Policy's Exclusion of Designated Professional Services; and (iii) the Insuring Agreement not being met due to the lack of allegations regarding the rendering or failure to render "professional services" subsequent to the Policy's effective date and Retroactive Date of October 30, 2009. Colony also disclaimed coverage to Jason Juberg and Donald Juberg because they are not "insureds" under the Policy. In addition, Colony reserved its rights to disclaim coverage based upon certain exclusions in the Policy, and reserved its right to seek rescission of the Policy.

### The Quist Lawsuit

48. ABC, Jason Juberg and Matthew Harper and others are defendants in a pending underlying lawsuit filed by Delphine Quist ("Quist") captioned as *Delphine Quist v. Douglas C.*

16

*Baker, et al.*, Kent County Circuit Court, Michigan, Case No. 09-10448-CA (the "Quist Lawsuit"). The Quist Lawsuit was filed on or about September 30, 2009. A copy of the First Amended Complaint in the Quist Lawsuit is attached hereto as **Exhibit D** and incorporated herein by reference.

49.     Douglas C. Baker, Ryan Baker, Genesis Equity Group, Genesis Equity Partners, Franke, Van Suillchem, Ruso, Global Wealth, DLG, American Equity and Applied Equities are also named defendants in the Quist Lawsuit. The Quist Lawsuit alleges that Douglas C. Baker, Ryan Baker, Franke, Van Suillchem and Ruso are or were employees of ABC. (Quist First Amended Complaint, ¶¶ 95, 97).

50.     In relevant summary, the Quist Lawsuit alleges that in 2007, 2008 and 2009, all Defendants, including but not limited to ABC, Jason Juberg, and Matthew Harper "sold investment contracts, notes and/or other securities to Plaintiff or materially participated" in such sale to Quist. (Quist First Amended Complaint, ¶ 27). The products alleged were unregistered securities of DLG and Applied Equities, Inc. (Applied Equities is an affiliate of DLG). (First Amended Complaint, ¶ 37).

51.     Based on these sales, Quist alleges the following claims:

▪     <u>Count I – Violation of the Michigan Securities Act (Quist First Amended Complaint, ¶¶ 31-41)</u>: Quist alleges the investments sold to her were "securities" under the Act, could not be lawfully sold in Michigan because they were unregistered, and that the Defendants were not properly registered under the Act. Quist further alleges that the Defendants told her the securities "would pay her mortgage together with an additional 12% annual return."

▪     <u>Count II – Breach of Contract (First Amended Complaint, ¶¶ 42-49)</u>: Quist alleges that she entered into promissory notes with Defendants by which Defendants agreed to pay Quist "a

fixed monthly amount, to pay interest at a guaranteed rate of 1% per month, to pay her house payment, and to provide other monetary benefits." Quist alleges breach of this agreement by Defendants.

- Count III – Negligence/Breach of Fiduciary Duty (First Amended Complaint, ¶¶ 50-58): Quist alleges that Defendants "induced Plaintiff to invest her life savings with them and promised that [they] would invest her money prudently, safely and in a manner that would pay her a guaranteed rate of return." Quist further alleges that Defendants "diverted Plaintiff's money for personal gain at the expense of Plaintiff" and that they breached their fiduciary duty owed to Quist.

- Count IV – Michigan Consumer Protection Act (First Amended Complaint, ¶¶ 59-63): Quist alleges that Defendants' actions constitute "unfair, unconscionable, or deceptive trade practices prohibited under MCL §445.903."

- Count V – Fraud (First Amended Complaint, ¶¶ 64-70): Quist alleges that Defendants "intentionally made false representations of material facts to Plaintiff regarding the securities, investments, money management, and guaranteed rates of return" and that Defendants "knew that the representations were false when made or made them recklessly...."

- Count VI – Innocent Misrepresentation  (First Amended Complaint, ¶¶ 71-76): Quist alleges that Defendants made certain representations to her, that she would not have entered into "the contract to invest money and/or purchase securities if Defendants had not made the representations" and that she suffered economic loss as a result of entering into the contracts with Defendants.

- Count VII – Promissory Estoppel  (First Amended Complaint, ¶¶ 77-83): Quist alleges that Defendants made promises to her to "pay her a guaranteed interest rate, return on investment

and other financial benefit if she would invest with Defendants." Quist alleges she relied to her detriment on these promises, that Defendants have not provided her the promised benefits and "have swindled her out of her life savings."

- Count VIII – Conversion (First Amended Complaint, ¶¶ 84-89): Quist alleges that Defendants "wrongfully appropriated" and "exercised wrongful dominion and control" over her life savings and home equity and that such actions constitute a wrongful conversion and misappropriation of her property.

- Count IX – Statutory Conversion (First Amended Complaint, ¶¶ 90-93): Quist alleges that "Defendants bought, received, possessed, concealed and/or aided in the concealment of converted property belonging to Plaintiff, with the knowledge that such property was converted" and that such action constitutes a statutory conversion in violation of MCL 600.2919a.

- Count X – Negligent Supervision (First Amended Complaint, ¶¶ 94-105): Quist alleges that ABC employed Ryan Baker, Douglas C. Baker and "upon information and belief, the remaining individual Defendants named herein." This count further alleges that Jason Juberg and Matt Harper "employed and/or supervised Douglas Baker, Ryan Baker and, upon belief, the remaining individual Defendants." Quist alleges that ABC, Jason Juberg and Matt Harper supervised the individual Defendants and "were aware the individual Defendants were selling securities in violation of the law," "were aware that individual Defendants were guaranteeing investment returns to individual investors, like Plaintiff, when investments returns were not guaranteed" and "were aware that individual Defendants told individual investors, like Plaintiff, that their investments were secured when, in fact, they were not." Quist further alleges that ABC, Jason Juberg and Matt Harper "were aware that individual Defendants, and other agents and employees, told Plaintiff to reference [sic] her home and invest with Supervising Defendants

for a guaranteed, secured rate of return of 12% per year." Quist claims ABC, Jason Juberg and Matt Harper breached their duty of care to her to properly supervise the individual Defendants, and that she has suffered financial loss, emotional distress and other non-economic harm.

52. As relief, Quist seeks damages in excess of $25,000, interest, cost, attorney's fees and any other relief the court finds "fair and equitable." Further, Quist seeks rescission as part of her relief for her claim of violation of the Michigan Securities Act, treble damages in her statutory conversion claim, and an order "compelling specific performance by Defendant[s] and/or a return of all money given to Defendants" in her promissory estoppel claim.

53. The defense of the Quist Lawsuit was tendered to Colony on or about December 9, 2009. Colony denied coverage under the Policy based upon various grounds, including: (i) the Insuring Agreement not being met due to no allegations regarding the rendering or failure to render "professional services" as defined by the Policy and as required by the Policy's Insuring Agreement; (ii) the Policy's Exclusion of Designated Professional Services; and (iii) the Insuring Agreement not being met due to the lack of allegations regarding the rendering or failure to render "professional services" subsequent to the Policy's effective date and Retroactive Date of October 30, 2009. Colony also disclaimed coverage to Jason Juberg, Harper, Douglas C. Baker, Ryan Baker, Franke, Van Suillchem and Ruso because they are not "insureds" under the Policy. In addition, Colony reserved its rights to disclaim coverage based upon certain exclusions in the Policy, and reserved its right to seek rescission of the Policy.

**The Draper Lawsuit**

54. ABC, Jason Juberg, Donald Juberg and Matthew Harper are defendants in a pending underlying lawsuit filed by Paul and Shirliann Draper (the "Drapers") captioned as *Paul Draper, et al. v. American Benefit Concepts, Inc., et al.*, Van Buren County Circuit Court,

20

Michigan, Case No. 09-59-026-CZ-B (the "Draper Lawsuit"). The Draper Lawsuit was filed on or about November 6, 2009. A copy of the Complaint in the Draper Lawsuit is attached hereto as **Exhibit E** and incorporated herein by reference.

55.    New Life and Whan are also named defendants in the Draper Lawsuit.

56.    The Drapers allege that they purchased from the defendants in the Draper Lawsuit a contract from DLG for $235,494.87. The Drapers further allege that "[i]n consideration for said sums, Defendants guaranteed Plaintiffs a twelve (12%) percent rate of return on their investment and a minimum yearly income of $28,440.00." (Draper Complaint, ¶ 9). Attached to the Draper Complaint as Exhibit 1 is the DLG contract, which has an issue date of October 11, 2007. Based on this transaction, The Drapers allege the following claims against the Defendants:

▪    Count I – Violation of the Michigan Securities Act (Draper Complaint, ¶¶ 11-20): The Drapers allege that the DLG contract was not properly registered under the Michigan Uniform Securities Act and that the Defendants were not properly registered under the Act. The Drapers further allege that the Michigan Department of Labor & Economic Growth Office of Finance and Insurance Regulation issued an Order to Cease and Desist in the sale of unregistered securities of and by DLG on November 21, 2008. The Drapers claim that by purchasing "these unregistered, non-exempt securities by unregistered salespersons," they have lost their initial investment. Further, the Drapers allege that based upon the recommendations and promises of the defendants, they invested an additional $47,517.55 through the defendants with Whan "so as to recover all or a portion of their losses" and that they "suffered penalties in the amount of $10,039.38 so as to make this additional investment."

▪    Count II – Fraud, Misrepresentation and Deceit (Draper Complaint, ¶¶ 21-24): The Drapers allege that "[t]hrough misrepresentations and deception Defendants fraudulently coerced

Plaintiffs to enter into a contract and invest approximately $283,012.42." They further allege that "Defendants, who were unregistered salespersons, knowingly invested Plaintiffs' money by purchasing unregistered, non-exempt securities that were not federally secured."

- Count III – Conversion (Draper Complaint, ¶¶ 25-30): The Drapers allege that "Defendants knowingly and wrongfully took Plaintiffs' money when they were unregistered salespersons and knew, or should have known that the securities were unregistered, non-exempt and were not federally secured." The Drapers allege Defendants' acts "constitute an unlawful conversion of Plaintiffs' property."

57.    As relief, the Drapers seek damages in an amount in excess of $283,012.42, costs, interest and attorneys fees. The Drapers also seek treble damages in connection with their conversion claim per MCL §600.2918, §600.2919 and §600.2919a.

58.    The defense of the Draper Lawsuit was tendered to Colony on or about December 9, 2009. Colony denied coverage under the Policy based upon various grounds, including: (i) the Insuring Agreement not being met due to no allegations regarding the rendering or failure to render "professional services" as defined by the Policy and as required by the Policy's Insuring Agreement; (ii) the Policy's Exclusion of Designated Professional Services; and (iii) the Insuring Agreement not being met due to the lack of allegations regarding the rendering or failure to render "professional services" subsequent to the Policy's effective date and Retroactive Date of October 30, 2009. Colony also disclaimed coverage to Jason Juberg, Donald Juberg and Harper because they are not "insureds" under the Policy. In addition, Colony reserved its rights to disclaim coverage based upon certain exclusions in the Policy, and reserved its right to seek rescission of the Policy.

**Other Anticipated Claims and Lawsuits**

59.     Based upon information learned to date, and upon information and belief, ABC and its principals, employees and/or agents have sold DLG securities and Applied Equities securities to numerous individuals other than the plaintiffs in the Bodnar Lawsuit, the Quist Lawsuit, the Draper Lawsuit, and the individuals identified by ABC in its Policy Application. Accordingly, it is reasonably likely that claims and lawsuits other than those described herein are in the process of being asserted or may soon be asserted against ABC, Jason Juberg, Donald Juberg, Matthew Harper, and other principals or agents of ABC which will concern ABC's sale of DLG securities and Applied Equities securities.

**CLAIMS FOR RELIEF**

**COUNT I**
**RESCISSION**

60.     Colony incorporates by reference Paragraphs 1 through 59, as though fully set forth herein.

61.     By reason of untrue statements, omissions, non-disclosures or concealments in the Policy Application signed by Jason Juberg on behalf of ABC, Colony is entitled to rescission of the Policy.

62.     By way of example and without limitation, ABC represented in its Application that it "immediately ceased" the sale of DLG securities in November 2008, but the Quist Lawsuit and Draper Lawsuit contain allegations that such sales continued after November 2008. ABC represented in its Application that in the past, when it was selling securities, it only sold DLG securities to a "select few" of its clients, but the Bodnar Lawsuit, Quist Lawsuit and Draper Lawsuit contain allegations that indicate otherwise, including the allegation in the Bodnar

Lawsuit that Donald Juberg sold DLG securities to "43 to 49 of his clients." ABC represented in its Application that there were only four claims against it involving the sale of DLG securities, and failed to identify circumstances that could give rise to other claims against it, including its sale of DLG securities to numerous other individuals, including the Bodnars (who filed suit only 4 days after the effective date of the Policy) and the Drapers (who filed suit only 7 after the effective date of the Policy). ABC also failed to disclose the Quist Lawsuit in its Application, which was filed on September 30, 2009, 20 days before Jason Juberg completed the Application on behalf of ABC and 10 days before the effective date of the Policy. ABC also represented that it was only currently selling insurance-related products and that the Policy was only being procured for purposes of such sales. However, upon issuance of the Policy, ABC tendered and sought coverage under the Policy for the Bodnar Lawsuit, the Quist Lawsuit and the Draper Lawsuit to Colony, all of which concern the sale of DLG securities and Applied Equities securities, not insurance-related products.

63.    Colony is informed and believes and on that basis alleges that Jason Juberg knew or should have known that his responses to one or more of the questions asked in the Application were untrue and incomplete, and that material information was omitted or concealed.

64.    Colony is informed and believes and on that basis alleges that the untrue responses and/or the omissions of material information on the Application were deliberate with the intent to deceive Colony and to induce Colony to issue the Policy.

65.    In reliance upon the truth of the statements and responses set forth in the Application and its belief that all material information had been disclosed, Colony issued the Policy for the $14,669.00 annual premium stated in the Declarations which forms a part of the Policy. At the time the Policy was issued, Colony was not aware of the untruthfulness of the

24

statements and responses and was unaware of the omissions, non-disclosures or concealments in connection with the Application. Had Colony known the true facts, it would not have issued the Policy in the form it was issued or for the premium charged.

66.     Colony hereby offers to return all premiums plus interest paid in connection with the Policy in exchange for rescission of the Policy.

67.     An actual controversy has arisen and now exists between Colony and the Defendants concerning the validity of the Policy. Justice requires that the parties be restored to their original positions prior to the issuance of the Policy. Therefore, Colony prays for an order that the Policy be declared null and void *ab initio*, that any and all rights and obligations under the Policy be extinguished.

**COUNT II**
**DECLARATORY RELIEF – "PROFESSIONAL SERVICES"**

68.     Colony incorporates by reference Paragraphs 1 through 67 as though fully set forth herein.

69.     The remaining Counts II through VI in this Complaint are pled in the alternative in the event that the Policy is not rescinded by the Court as requested by Colony in Count I herein.

70.     The Insuring Agreement of the Policy provides that, subject to all other terms, conditions and provisions, the Policy extends only to claims based on acts, errors or omissions by an insured in the rendering or failing to render "Professional Services." "Professional Services" is defined in the Policy as follows:

> "Professional services" means those services performed for others in the insured's capacity as a duly licensed insurance agent, broker or consultant, employee benefits counselor or notary public and as described in the Declarations of this Policy.

KUPELIANORMOND&MAGY
A PROFESSIONAL CORPORATION

KOM

Policy, Section VII.1, 2 and 6.  The Declarations of the Policy describes the insured's "covered profession" as "insurance agent."

71.    In addition, the Policy includes an Endorsement that excludes from "professional services" "DLG and any equity financing products or related services provided."  Policy, Exclusion of Designated Professional Services.

72.    ABC, Jason Juberg, Donald Juberg, Matthew Harper and all other defendants alleged to be employees or agents of ABC were not performing "Professional Services" when they engaged in the activities alleged against them in the Bodnar Lawsuit, the Quist Lawsuit and the Draper Lawsuit.  Because the issues in such Lawsuits do not concern the rendering or failure to render "Professional Services" performed by any insured, there is no coverage under the Policy for such Lawsuits.

73.    Upon information and belief, additional claims or lawsuits will be filed against ABC, Jason Juberg, Donald Juberg, Matthew Harper and possibly other employees/agents of ABC involving the sale of DLG securities or Applied Equities securities.  To the extent such anticipated claims and lawsuits will not allege the rendering or failure to render "Professional Services," there will be no coverage available under the Policy for such anticipated claims or lawsuits.

74.    An actual controversy has arisen and now exists between Colony and the Defendants concerning Colony's duties and obligations in connection with the Bodnar Lawsuit, the Quist Lawsuit, the Draper Lawsuit, and additional anticipated claims or lawsuits involving the sale of DLG securities or Applied Equities securities.  Therefore, pursuant to 28 U.S.C. § 2201, *et seq.*, and Rule 57 of the Federal Rules of Civil Procedure, Colony requests a declaration

KUPELIAN ORMOND & MAGY
A PROFESSIONAL CORPORATION

KOM

from this Honorable Court that: (i) the Policy does not cover the claims arising from the Bodnar Lawsuit, the Quist Lawsuit, the Draper Lawsuit or any anticipated claims or lawsuits involving the sale by ABC or its employees or agents of DLG securities or Applied Equities securities; and (ii) Colony has no obligation to defend or indemnify the Insureds in the Bodnar Lawsuit, the Quist Lawsuit, the Draper Lawsuit, or any anticipated claims or lawsuits involving the sale by ABC or its employees or agents of DLG securities or Applied Equities securities.

## COUNT III
## DECLARATORY RELIEF – RETROACTIVE DATE

75.    Colony incorporates by reference Paragraphs 1 through 74 as though fully set forth herein.

76.    The Insuring Agreement of the Policy provides that, subject to all other terms, conditions and provisions, the Policy extends only to "'claims' for 'damage' only if … the 'damage' arises out of a 'professional service' that occurs subsequent to the Policy effective date or Retroactive Date, if applicable, and prior to the expiration of the Policy…." Policy, Section I.b.2. The Policy's effective date and Retroactive Date is October 30, 2009.

77.    To the extent any "professional services" are found to be alleged in the Bodnar Lawsuit, the Quist Lawsuit or the Draper Lawsuit, such "professional services" occurred prior to the October 30, 2009 effective date/Retroactive Date of the Policy and thus there is no coverage under the Policy for such Lawsuits.

78.    Upon information and belief, additional claims or lawsuits will be filed against ABC, Jason Juberg, Donald Juberg, Matthew Harper and possibly other employees/agents of ABC involving the sale of DLG securities or Applied Equities securities.  To the extent they

allege "professional services" that occurred prior to October 30, 2009, there will be no coverage available under the Policy for such anticipated claims or lawsuits.

79.    An actual controversy has arisen and now exists between Colony and the Defendants concerning Colony's duties and obligations in connection with the Bodnar Lawsuit, the Quist Lawsuit, the Draper Lawsuit, and additional anticipated claims or lawsuits involving the sale of DLG securities or Applied Equities securities.  Therefore, pursuant to 28 U.S.C. § 2201, *et seq.*, and Rule 57 of the Federal Rules of Civil Procedure, Colony requests a declaration from this Honorable Court that: (i) the Policy does not cover the claims arising from the Bodnar Lawsuit, the Quist Lawsuit, the Draper Lawsuit or any anticipated claims or lawsuits involving the sale by ABC or its employees or agents of DLG securities or Applied Equities securities; and (ii) Colony has no obligation to defend or indemnify the Insureds in the Bodnar Lawsuit, the Quist Lawsuit, the Draper Lawsuit, or any anticipated claims or lawsuits involving the sale by ABC or its employees or agents of DLG securities or Applied Equities securities.

## COUNT IV
## DECLARATORY RELIEF -- NO "DAMAGES"

80.    Colony incorporates by reference Paragraphs 1 through 79, as though fully set forth herein.

81.    Subject to all other Policy terms, conditions and provisions, the Policy only provides coverage for amounts the insured must pay as "damages."  "Damages" is defined in the Policy as "judgments, awards and settlements and insured is legally obligated to pay as a result of a 'claim' to which this policy applies."  Policy, Section VII.2.  In addition, the Policy contains an Endorsement excluding coverage for "any 'claim' for or awards of:  1.  Punitive, exemplary or multiple damages; or 2. Equitable or non-pecuniary relief; including any fines, penalties, court

imposed sanctions, return or restitution of legal fees, costs or other expenses associated with such awards." Policy, Punitive, Exemplary or Multiple Damages Exclusion.

82.    The equitable and exemplary relief sought by the plaintiffs in the Quist Lawsuit and the Draper Lawsuit does not constitute "Damages" as defined by Policy, and therefore no coverage is afforded for such relief.

83.    An actual controversy has arisen and now exists between Colony and the Defendants concerning Colony's duties and obligations in connection with the Bodnar Lawsuit, the Quist Lawsuit, the Draper Lawsuit, and additional anticipated claims or lawsuits involving the sale of DLG securities or Applied Equities securities.   Therefore, pursuant to 28 U.S.C. § 2201, *et seq.*, and Rule 57 of the Federal Rules of Civil Procedure, Colony requests a declaration from this Honorable Court that: (i) the Policy does not cover the claims arising from the Bodnar Lawsuit, the Quist Lawsuit, the Draper Lawsuit and any anticipated claims or lawsuits involving the sale by ABC or its employees or agents of DLG securities or Applied Equities securities; and (ii) Colony has no obligation to defend or indemnify the Insureds in the Bodnar Lawsuit, the Quist Lawsuit, the Draper Lawsuit, or any anticipated claims or lawsuits involving the sale by ABC or its employees or agents of DLG securities or Applied Equities securities.

## COUNT V
## DECLARATORY RELIEF -- APPLICATION OF EXCLUSIONS

84.    Colony incorporates by reference Paragraphs 1 through 83, as though fully set forth herein.

85.    In the event the Policy is not rescinded or declaratory relief is not awarded to Colony on the basis that the Policy's Insuring Agreement is not met, one or more exclusions contained in the Policy bar coverage for the claims arising from the Bodnar Lawsuit, the Quist

Lawsuit, the Draper Lawsuit, or any anticipated claims or lawsuits involving the sale by ABC or its employees or agents of DLG securities or Applied Equities securities.

86.    The Policy contains exclusions to coverage, as follows:

2.    Exclusions

This Policy does not apply to any "claim:"

a.    Based on or directly or indirectly arising from:

(1)    A "professional service" rendered prior to the effective date of the Policy if any insured knew or could have reasonably foreseen that the "professional service" could give rise to a "claim;"…

(3)    Any "claim", suit, act, error or omission disclosed in the application for this Policy;

***

e.    Based on or directly or indirectly arising out of rendering or failure to render "professional services" as an attorney, accountant, actuary, tax preparer or tax consultant, real estate broker, security broker, travel agent, security dealer, mortgage broker, financial planner, title agent or any other "professional service" unless such "professional services" are specifically insured hereunder by endorsement and an additional premium paid;

f.    Based on or directly or indirectly arising out of:

(1)    The registering, qualifying or reporting under:

(a)    the Securities Act of 1933
(b)    the Securities Exchange Act of 1934
(c)    the Investment Company Act of 1940
(d)    the Trust Indenture Act of 1939
(e)    the Investment Advisors Act of 1940
(f)    the Public Utility Holding Company Act of 1935
(g)    state Blue Sky laws, and

(h)    any similar state statute, any rule or regulation promulgated under any of the foregoing, any amendment to any of the foregoing, or any provision of the common law imposing liability in connection with the offer, purchase or sale of securities;

(2)    Private placement of private securities, limited partnerships, syndicates of any kind or real estate investment trusts;

*** 

k.    Based on or directly or indirectly arising out of or resulting from:

(1)    Any act committed with knowledge of its wrongful nature or with the intent to cause damage;

(2)    The gaining by the insured of any personal profit, gain or advantage to which the insured is not legally entitled; or

(3)    Any criminal, fraudulent or dishonest act.

However, we shall defend such allegations against the insured if it involves a "claim" otherwise covered under the Policy until final adjudication;

***

q.    Based on or directly or indirectly arising out of or resulting from a mistaken, false, misleading or deceptive representation of any security, mutual fund or any variable or fixed annuity or variable life insurance product; or guarantee by an insured of any investment results, returns, interest rates, yield, future premium payments or tax consequences in connection with any life insurance product, annuity, mutual fund or security by an insured or by others on the insured's behalf; or in connection with a viatical settlement;....

Policy, Section I.2.a, e, f, k and q.

87. Colony is informed and believes and on that basis alleges that the Bodnar Lawsuit, the Quist Lawsuit, the Draper Lawsuit, and any anticipated claims or lawsuits involving the sale by ABC or its employees or agents of DLG securities or Applied Equities securities arise from, in whole or in part, activities excluded from coverage under the Policy pursuant to the Policy exclusions set forth in paragraph 86, above.

88. An actual controversy has arisen and now exists between Colony and the Defendants concerning Colony's duties and obligations in connection with the Bodnar Lawsuit, the Quist Lawsuit, the Draper Lawsuit, and additional anticipated claims or lawsuits involving the sale of DLG securities or Applied Equities securities. Therefore, pursuant to 28 U.S.C. § 2201, *et seq.*, and Rule 57 of the Federal Rules of Civil Procedure, Colony requests a declaration from this Honorable Court that: (i) the Policy does not cover the claims arising from the Bodnar Lawsuit, the Quist Lawsuit, the Draper Lawsuit and any anticipated claims or lawsuits involving the sale by ABC or its employees or agents of DLG securities or Applied Equities securities; and (ii) Colony has no obligation to defend or indemnify the Insureds in the Bodnar Lawsuit, the Quist Lawsuit, the Draper Lawsuit, or any anticipated claims or lawsuits involving the sale by ABC or its employees or agents of DLG securities or Applied Equities securities.

## COUNT VI
## DECLARATORY RELIEF – DEFINTION OF "INSURED"

89. Colony incorporates by reference Paragraphs 1 through 88, as though fully set forth herein.

90. Subject to all other Policy terms, conditions and provisions, the Policy provides coverage only to an "Insured." An "Insured" is defined under the Policy as:

SECTION II – WHO IS AN INSURED

1.    The Named Insured stated in the Policy Declarations.

2.    Any person who is or was your partner, officer, director, stockholder or employee, but only for "professional services" rendered on your behalf....

Policy, Section II.1 and 2.

91.    Jason Juberg, Donald Juberg, Matthew Harper, Douglas C. Baker, Ryan Baker, Franke, Van Suillchem and Ruso each are not an "Insured" as defined by the Policy, as the allegations against them in the Bodnar Lawsuit, the Quist Lawsuit and the Draper Lawsuit do not involve "'professional services' rendered on [ABC's] behalf...." Therefore, Jason Juberg, Donald Juberg, Matthew Harper, Douglas C. Baker, Ryan Baker, Franke, Van Suillchem and Ruso are not entitled to a defense or indemnity under the Policy in connection with the Bodnar Lawsuit, the Quist Lawsuit, the Draper Lawsuit, and any anticipated claims or lawsuits involving the sale of DLG securities or Applied Equities securities.

92.    Douglas C. Baker, Ryan Baker, Franke, Van Suillchem and Ruso each are not an "Insured" as defined by the Policy as they are not a "partner, officer, director, stockholder or employee" of ABC as required by Section II.2 of the Policy. Therefore, Douglas C. Baker, Ryan Baker, Franke, Van Suillchem and Ruso are not entitled to a defense or indemnity under the Policy in connection with the Bodnar Lawsuit, the Quist Lawsuit, the Draper Lawsuit, and any anticipated claims or lawsuits involving the sale of DLG securities or Applied Equities securities.

93.    An actual controversy has arisen and now exists between Colony and the Defendants concerning Colony's duties and obligations in connection with the Bodnar Lawsuit, the Quist Lawsuit, the Draper Lawsuit, and additional anticipated claims or lawsuits involving the sale of DLG securities or Applied Equities securities. Therefore, pursuant to 28 U.S.C. § 2201, *et seq.*, and Rule 57 of the Federal Rules of Civil Procedure, Colony requests a declaration



KUPELIAN ORMOND & MAGY
A PROFESSIONAL CORPORATION

KOM

from this Honorable Court that: (i) the Policy does not cover the claims arising from the Bodnar Lawsuit, the Quist Lawsuit, the Draper Lawsuit and any anticipated claims or lawsuits involving the sale by ABC or its employees or agents of DLG securities or Applied Equities securities; and (ii) Colony has no obligation to defend or indemnify the Insureds in the Bodnar Lawsuit, the Quist Lawsuit, the Draper Lawsuit, or any anticipated claims or lawsuits involving the sale by ABC or its employees or agents of DLG securities or Applied Equities securities.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff Colony Insurance Company respectfully requests that this Honorable Court:

1.  Enter an order rescinding the Policy and declaring that it is null and void *ab initio*, that any and all rights and obligations under the Policy are extinguished, and returning the parties to their respective positions prior to entering into the Policy;

2.  In the alternative, in the event that the Policy is not rescinded, enter an order declaring that there is no coverage under the Policy for the Bodnar Lawsuit, the Quist Lawsuit, the Draper Lawsuit, or any anticipated claims or lawsuits involving the sale by ABC or its employees or agents of DLG securities or Applied Equities securities, and that Colony has no defense or indemnity obligations for such lawsuits or claims;

3.  Award Colony interest, costs and attorneys fees incurred in this action; and

4.  Award Colony such other and further relief, including equitable relief, as the Court deems just and proper.

Respectfully submitted,

Peter B. Kupelian (P31812)
Carol G. Schley (P51301)
Kupelian Ormond & Magy, P.C.
25800 Northwestern Highway, Suite 950
Southfield, MI 48075
(248) 357-0000
(248) 357-7488 (fax)

Counsel for Plaintiff Colony Insurance Company

DATE:  January 7, 2010

2311-1001/170054



35